**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **LAWRENCE EDWARDS** | **CASE NO. 6:23-cv-00649** |
| **Plaintiff,** | **SECTION: DCJ-CBW** |
| **V.** | |
| | **DISTRICT JUDGE: DAVID C. JOSEPH** |
| **TIDEWATER MARINE, LLC and INTERMOOR, INC.** | |
| | **MAGISTRATE JUDGE: CAROL B. WHITEHURST** |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF MOTION OF LAWRENCE EDWARDS TO REMAND TO THE 16TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. MARY FROM WHICH IT WAS WRONGFULLY REMOVED**

MAY IT PLEASE THE COURT:

## I. NATURE OF THE MOTION

Plaintiff, Lawrence Edwards, is herewith filing a motion asking for remand of this matter to the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, from which it was wrongfully removed.

## II. SUMMARY OF THE ARGUMENT

1. Plaintiff, an anchor handler, was undisputedly injured while employed by Intermoor, Inc. He is, without question, a Jones Act seaman as was established as early as *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir. 1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). This holding has been reaffirmed in subsequent holdings, dicta, and doctrine regardless of any other test. *Bertrand*, is, thus, a seminal case in which Intermoor was a party and its employee was declared a seaman, as are all anchor handlers. See Plaintiff's Affidavit, attached hereto (Exhibit "A").

2. Petitions filed by seamen in Louisiana courts under the Savings to Suitors provision, 28 U.S. C. § 1333, are nonremovable, may not be removed to this Court, 28 U.S.C. § 1445, and must be remanded.

## III. THE FACTS ACCORDING TO INTERMOOR

> 1. On or about December 24, 2022, Lawrence Edwards was employed by InterMoor and was temporarily assigned to an offshore job involving the preset of a MODU located off of the coast of Mexico for which InterMoor had been contracted. Tidewater Marine, LLC was also an independent contractor who allegedly supplied and crewed the M/V PACIFIC DUCHESS from which InterMoor employees were stationed. While Lawrence Edwards was on the back deck of the M/V PACIFIC DUCHESS to secure equipment, a rogue wave came over the deck and reportedly injured Edwards. InterMoor did not own the M/V PACIFIC DUCHESS and Edwards was not, more or less, permanently assigned to any identifiable fleet of vessels during the tenure of his employment with InterMoor. In particular, InterMoor did not own or operate the offshore platforms or vessels to which Mr. Edwards was assigned during his employment. Mr. Edwards had no vessel navigational responsibilities. As part of its offshore services, InterMoor provides workers on a transient basis and does not operate any fleet of vessels.
>
> 7. InterMoor provides onshore and offshore services and consulting to the offshore energy industries.
>
> 8. Plaintiff began his employment with InterMoor in 2021 and was assigned to various land and offshore jobs involving various facilities and offshore structures.[1] He worked from the M/V PACIFIC DUCHESS for less than 6% of his employment with InterMoor.
>
> 9. InterMoor did not own, bareboat charter, or operate any of the offshore facilities or vessels to which Plaintiff was temporarily assigned while working offshore, including the M/V PACIFIC DUCHESS. [2]
>
> 10. Plaintiff did not have any navigational responsibilities when he worked on or from any vessels to which he may have been assigned, including the M/V PACIFIC DUCHESS.
>
> 13. Edwards' work included land and offshore assignments. His offshore work assignments were "discrete transient" jobs with no allegiance to any vessel under common ownership or control. According to Edwards work

---

[1] [1]*See* **Exhibit 2**, **Attachment A**. Edwards worked 324 days total. Of those days, 137 were onshore assignments. 57 days were on an offshore ARGOS Platform, 52 days on the SKANDI SKANSEN owned by DOF Group, and 18 days on the Tidewater M/V PACIFIC DUCHESS.

records, he worked 324 days for InterMoor. Of those days, 18 days were aboard the M/V PACIFIC DUCHESS allegedly owned by Tidewater Marine LLC, 52 days on the DOF-owned SKANDI SKANSEN, and 189 days on land and platforms. He was never assigned to a vessel under common ownership for more than 30% of his employment.

## IV. NO FACT ADVANCED BY INTERMOOR DIMINISHES THE HOLDING THAT AN ANCHOR HANDLER INJURED WHILE ENGAGED IN ANCHOR HANDLING IS A SEAMAN

In *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir. 1983),

*cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984),

> The issue of which marine workers qualify as Jones Act seamen again surfaces before this court. Plaintiffs, who were members of an anchorhandling crew for International Mooring and Marine, Inc. (IMM), sued under the Jones Act to recover for injuries suffered in a one-vehicle accident while returning from a one-week relocation job.
>
> * * * *
>
> Further support for plaintiffs' claim to seaman status appears in the nature of their work. First, like the welder's work in *Ardoin,* “the nature of [claimant's] work was such that he never worked except in conjunction with one of these [vessels].” *Ardoin,* 641 F.2d at 282. *Compare Abshire,* 668 F.2d at 836 (claimant “spent his entire working time aboard ships, except for those rare occasions where he was rigging or making preparation for work to be performed aboard vessels”) *with Fazio,* 567 F.2d at 303 (on some days, shore crew's duties were confined solely to shore). Second, the anchorhandlers' work from the vessels was their primary duty, and not merely incidental to work on shore or a nonvessel. *Compare with Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d at 353 (work aboard vessel was no more than transitory or incidental to employment aboard the platform) *and Longmire,* 610 F.2d at 1346 (“because of the symbiotic relationship between the tender and the drilling platform, [claimant's] performance of [his primary duty concerning drilling operations on the platform] necessarily carried him on to the tender from time to time”). Third, the IMM crew aided in readying the vessel for its mission. *Compare Davis,* 549 F.2d at 328 (claimant assisted in welding cracks on vessel, worked with the crew in washing the deck, and helped load and unload the barge alongside the crew) *with Guidry v. Continental Oil Co.,* 640 F.2d at 526 n. 8 (other than his specific job duties, claimant engaged in no activities which contributed to the rig's mission). Each of these factors provide further evidence that a reasonable person could conclude that plaintiffs were seamen by virtue of a permanent attachment to the vessels.

> In conclusion, the district court's view of the group of vessels concept was too restrictive. If plaintiffs demonstrate the presence of the *Robison* criteria, employers cannot prevent seamen from recovering under the Jones Act by assigning them to different vessels or by making arrangements with third parties concerning the operation or navigation of the vessels upon which they serve. Since our review of the undisputed facts in light of *Robison* and the group of vessels concept discussed above reveals that reasonable persons could conclude that plaintiffs were Jones Act seamen, the granting of summary judgment for defendants was inappropriate. Plaintiffs are entitled to a trial on the merits to establish their seaman status.

*Bertrand* was reaffirmed in *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 435 (5th Cir. 1984). See also, *Wisner v. Prof'l Divers of New Orleans*, 98-1755 (La. 3/2/99, 3/2/99)–6); 731 So.2d 200, 201–06, citing *Bertrand* with approval; *Webster v. Seahorse Fleet, Inc.*, 637 F.Supp. 151 154 (W.D. La. 1986);[2] *Tynes v. Halliburton Servs., Inc.*, CIV. A. 89-5377, 1990 WL 128217, at *3 (E.D. La. Aug. 24, 1990) "In contrast, anchor handlers and commercial divers have been found to be Jones Act seamen despite the lack of a permanent attachment to a particular vessel or fleet because the plaintiffs in these cases were continuously exposed to the perils of the sea and the nature of the work was undeniably maritime;[5]" *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1076 (5th Cir. 1986) ["We do not decide whether the same principle governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's duties-work closely related to the movement of vessels-but does his work on short voyages aboard a large number of vessels. *See Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir.1983). Bertrand and his fellow anchor handlers are good examples of this type worker."].

[2] The Court has already alluded to the possible differences between anchor handlers and divers. While anchor handlers may always qualify as seamen, a diver does not become a seaman just because he is a diver. At times, divers set up on land and work on vessels or even fixed structures in water where they literally walk or swim to work and they are not seamen. *See, Casaceli v. Martech Intern., Inc.*,774 F.2d 1322 (5th Cir.1985). Although divers do not always go down to the sea in ships, they always do perform their business in great waters. It is also noted that *Wallace* was under consideration for rehearing for over a year and before anyone had a chance to tighten the noose around Wallace's neck, the Court was notified that all claims had been disposed of by the parties and a mandate was properly issued. There may still be a few "wanted posters" out on Wallace, but this Court will decline to collect any reward.

This was addressed by Kenneth G. Engerrand, Escape from the Labyrinth: Call for the Admiralty Judges of the Supreme Court to Reconsider Seaman Status, 40 Hous. J. Int'l L. 741, 754–56 (2018):

> The waters became muddier in *Bertrand v. International Mooring & Marine, Inc*.[91] Tenneco engaged International Mooring & Marine to supply an anchor handling crew for a vessel that Tenneco chartered to assist in moving an offshore drilling rig. The missions performed by the anchor handling crew lasted from several hours to nineteen days. The average job lasted four to five days, and the Tenneco job lasted seven days. At the end of the Tenneco job, one of the employees was killed and three were injured in a traffic accident in their employer's van.[92]
>
> International Mooring did not own any vessels, and its anchor-handling crews normally worked on special purpose vessels equipped to lift heavy anchors from the ocean floor. "[T]he vessels were generally chartered by [International Mooring's] customer, but at times, [International Mooring] acted as a broker for the customer and did, on occasion, charter vessels directly for their own use and then bill the customer for the cost."[93]
>
> Concluding that "one cannot be a member of a crew of numerous vessels, which have no common ownership and control,"[94] the district court held that the anchor handlers were not seaman. The panel of the Fifth Circuit in *Bertrand* did not agree with the district court's interpretation and rejected the requirement that the vessels on which the workers labored must be under common control or ownership in order to constitute a fleet.[95] The panel did not believe that the absence of ownership by the workers' employer of any of the vessels should preclude a finding of seaman status: "[W]e will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned."[96] The court gave no guidance, in its expansion of the fleet to vessels that are not under any common ownership or control, other than to caution that, as "the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory."[97]

See also, David W. Robertson, *The Supreme Court's Approach to Determining Seaman Status: Discerning the Law Amid Loose Language and Catchphrases*, 34 J. Mar. L. & Com. 547, 558 (2003); SEAMAN STATUS AND THE EVOLVING REQUIREMENT OF "IDENTIFIABLE FLEET", Ann.2001 ATLA-CLE 41.

Respectfully submitted:

/s/ George W. Byrne, Jr.
R. BRENT CUERIA (#18176)
Cueria Law Firm, LLC
650 Poydras Street, Suite 2740
New Orleans, LA 70130
Telephone: (504) 525-5211
Facsimile: (504) 525-3011
Email: cuerialaw@gmail.com

GEORGE W. BYRNE, JR. (#3744)
Of Counsel
Cueria Law Firm, LLC
650 Poydras Street, Suite 2740
New Orleans, LA 70130
Telephone: (504) 525-5211
Facsimile: (504) 525-3011
E-mail: gwb504@gmail.com

ALLISON B. SCULLY (#34976)
Attorney at Law
12 Alden Lane
Mountain Brook, AL 35213
Telephone: (205) 790-1658
Email: ascuerialaw@gmail.com

Attorneys for Plaintiff, Lawrence Edwards

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all interested counsel via ECF filing on this 13th day of June, 2023.

/s/ George W. Byrne, Jr.