# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **LAWRENCE EDWARDS** | **CASE NO. 6:23-CV-00649** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **INTERMOOR INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand (Rec. Doc. 15). Defendants, Tidewater Marine, LLC and InterMoor, Inc., opposed the motion (Rec. Doc. 29 and 30 respectively). The Court permitted Plaintiff to file an untimely reply (Rec. Doc. 69).

The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Plaintiff's Motion to Remand be denied.

## Facts and Procedural History

Plaintiff filed suit in state court in April 2023, following a work accident aboard the *M/V Pacific Duchess*. Plaintiff alleged he was a Jones Act seaman working for either InterMoor or Tidewater at the time of the accident. (Rec. Doc. 1-

1). Evidence has since revealed that Plaintiff was employed by InterMoor (Rec. Doc. 15-2; 30-1) and that the *Pacific Duchess* was owned by a Tidewater entity (Rec. Doc. 45-1).

InterMoor removed the case on the grounds of diversity jurisdiction and asserted that Plaintiff had improperly pled his status as a Jones Act seaman to keep the case in state court. (Rec. Doc. 1). The sole issue is whether Plaintiff was a Jones Act seaman, a fact which, if true, mandates remand to state court where Plaintiff filed suit.

## **Law and Analysis**

Federal law affords certain protections for seaman under the Jones Act. See *Becker v. Tidewater, Inc.,* 335 F.3d 376, 387 (5th Cir. 2003), *as revised* (July 24, 2003). Generally, Jones Act cases filed in state court are not removable. 28 U.S.C. § 1445(a); *Linton v. Great Lakes Dredge & Dock Co.,* 964 F.2d 1480, 1483 (5th Cir. 1992); *Lackey v. Atl. Richfield Co.,* 990 F.2d 202, 207 (5th Cir. 1993). Defendants contend Plaintiff improperly or fraudulently pled his status as a Jones Act seaman to prevent removal. The Fifth Circuit explained:

> [W]hile federal courts ordinarily look only to the plaintiffs' pleadings in determining whether a Jones Act claim has been stated, defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal. The fact that Jones Act claims are ordinarily not removable does not prevent this inquiry.
> …
> This right, however, exists in tension with the Jones Act plaintiff's right to choose a state court forum. Defendants may abuse

the assertion of fraud in the hope of achieving a federal adjudication of the merits of a disputable Jones Act claim. For that reason, the mere assertion of fraud is not sufficient to warrant removing the case to federal court. Defendants must prove that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of the plaintiff. As in fraudulent joinder cases, defendants' burden of persuasion is a heavy one. The district court must resolve disputed questions of fact from the pleadings and affidavits in favor of the plaintiff. The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action.

*Lackey v. Atl. Richfield Co.,* 990 F.2d 202, 207 (5th Cir. 1993) (cleaned up).

Importantly, "[t]he court must resolve all disputed questions of fact from the pleadings and affidavits in favor of the plaintiff, and then determine whether there could possibly be a valid claim against the defendant in question." *Id*. at 208. Thus, the Court must determine whether Plaintiff can possibly establish that he is a Jones Act seaman. Relying primarily upon *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Fifth Circuit exhaustively outlined the applicable law as follows:

> To determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act, the Supreme Court has established a two-prong test. First, an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. Second, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.[1]
>
> The Supreme Court in *Chandris* admitted that satisfying the first prong of the test is relatively easy: the claimant need only show that he

---

[1] This test is derived from *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959) and is often referred to throughout the jurisprudence as the *Robison* test.

3

does the ship's work. This threshold requirement is very broad, encompassing all who work at sea in the service of a ship.
…
Turning to the second prong—whether plaintiff has a connection to a vessel in navigation that is substantial both in duration and nature—…[t]he requirement of a substantial connection to a vessel is intended to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation. As the Supreme Court has noted,

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon. The duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. [*Chandris,* at 370.]

Importantly, this second prong constitutes a status-based standard—*i.e.,* it is not the employee's particular job that is determinative of seaman status, but the employee's connection to a vessel. As a result, the Court speculated that under this standard even a ship repairman, who may know nothing about boating or sailing, could qualify as a seaman. The Court expounded on this status-centric language in [*Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997)] noting that it matters whether "the employee's duties take him to sea" and that the Jones Act's coverage is confined to "those workers who face *regular* exposure to the perils of the sea." By invoking a status-based standard, the Court rejected, both explicitly and by necessary implication, a so-called "voyage test" in which anyone working on board a vessel for the duration of a "voyage" in furtherance of the vessel's mission has the necessary employment-related connection to qualify as a seaman.

While seaman status is not simply a temporal concept, the amount of time a worker spends aboard a vessel in navigation is helpful in determining if that worker has attained seaman status. This circuit

4

has quantified the duration of time necessary to allow submission of the issue of seaman status to a jury by using a 30 percent rule of thumb. As a general rule, a worker must show substantial duration by demonstrating that 30 percent or more of his time is spent in service of that vessel. The Supreme Court endorsed this thirty-percent rule:

> Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.... And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict. [Chandris, 515 U.S. at 371]

*Becker v. Tidewater, Inc.,* 335 F.3d at 387–90 (cleaned up).

The *Becker* court recognized an exception to the general 30% rule: the situation in which a worker's status truly converts from seaman to non-seaman and vice versa during the duration of his employment (*Id*. at 389); however, the court acknowledged that a worker's temporary change in status does not impose seaman status:

> This exception, however, creates a potential problem: any worker who works intermittently on vessels in navigation and who sustains an injury in the course of doing so will claim seaman status if he is injured while at sea. For instance, a worker whose duties sometimes take him to sea could claim that the start of each voyage establishes a reassignment to a sea-based position and that his return to shore again shifts his status back to a land-based worker. It appears that the Supreme Court attempted to preempt such arguments by specifically rejecting a "voyage test" of seaman status under which a worker could "walk into and out of coverage in the course of his regular duties."

5

> Rather, the Court's opinion in *Chandris* contemplates that a change in coverage under the Jones Act occurs only when the status of the worker changes, not simply because a worker happens to serve on a vessel before returning to work on land. Thus, for plaintiff to qualify for the Jones Act's protections, he must have undergone a substantial change in status, not simply serve on a boat sporadically. To give teeth to the *Chandris* opinion's rejection of a voyage test, it must be held that merely serving an assignment on a vessel in navigation does not alter a worker's status. If that were not the case, *Chandris* in fact *would* have established a voyage test. This conclusion is consistent with the language of *Chandris,* which instructs that "we do not believe that any maritime worker on a ship at sea as part of his employment is automatically a member of the crew within the meaning of the statutory scheme."

*Id*. (cleaned up)

In sum, if the employer shows that the plaintiff does not satisfy the 30% rule, the plaintiff may rebut that showing with evidence that he underwent a substantial, permanent change in status in which his essential duties changed to that of a seaman. *Id*., citing *Chandris*, 515 U.S. at 372. See also *Zertuche v. Great Lakes Dredge & Dock Co., LLC*, 306 F. App'x 93, 97 (5th Cir. 2009).

At the time of the accident, Plaintiff was employed by InterMoor as a rigger onshore with occasional assignments offshore. (Rec. Doc. 15-2; 30-1). He worked for InterMoor for 324 days, of which 187 days (approximately 58%) were spent onshore. (Rec. Doc. 30-1; 1-3). The remaining 137 days of his employment were the following offshore assignments: work on the ARGOS Platform for 57 days (including 12 days on stand-by/quarantine time); work on the Exxon Hoover Project

6

for 62 days (11.5 days on stand-by/quarantine and transportation and 50.5 days of work aboard the *M/V Skandi Skansen*); work on the Pacific Duchess Project for 18 days (including 5 days aboard the *M/V Pacific Duchess* and 13 days of onshore quarantine, loading of equipment, and transportation). (Rec. Doc. 30-1; 30-2). In total, Plaintiff was aboard a vessel for 55.5 days (approximately 17%) of his employment.

Plaintiff offered no evidence countervailing that he spent well under 30% of his employment aboard a vessel. Instead, Plaintiff relies on the *Chandris* change-in-status exception. He does not dispute that he worked as a rigger, but he argues that at the time of the accident aboard the *Pacific Duchess*, he was an anchor handler, which he contends was a change in status qualifying him as a seaman despite his limited time aboard vessels. He relies chiefly upon *Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir. 1983) and subsequent jurisprudence pre-dating *Chandris*.

In *Bertrand*, the court found that anchor handlers who were killed in an auto accident during a relocation were seaman, despite the facts that they were on land at the time of the accident and had been assigned to vessels owned or chartered by various entities. *Id*. at 245-46. In applying the *Robison* test, the court found that

7

anchor handlers satisfied the first prong,[2] because their "duties clearly contributed to the accomplishment of the vessel's mission, the relocation of the drilling barge." *Id*. at 246. Regarding the second prong, the court found that the anchor handlers' work aboard vessels qualified, because the facts revealed that the crew had worked on twenty-five vessels and performed ninety percent of their work aboard vessels. *Id*.

Plaintiff appears to rely on *Bertrand* for the proposition that Plaintiff's job of anchor handling at the time of accident is sufficient to convey seaman status; however, Plaintiff's position ignores *Chandris*'s status-based standard. As the Fifth Circuit stated, "it is not the employee's particular job that is determinative of seaman status, but the employee's connection to a vessel." *Becker*, 355 F.3d at 388. The court has further limited its holding in *Bertrand*, noting:

> Our later decisions clearly reflect that the court in *Bertrand* was concerned with denying seaman status to anchor handlers, traditional maritime workers, merely because of the contractual arrangements made by their employer. Our decisions after *Bertrand* have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels.

*St. Romain v. Indus. Fabrication & Repair Serv., Inc.,* 203 F.3d 376, 380 (5th Cir. 2000) (citations omitted). See also *Ketnor v. Automatic Power, Inc.,* 850 F.2d 236,

---

[2] In relying on the test as set forth in *Robison*, the *Bertrand* court considered the two prongs in reverse order. This Court shall consider the prongs as addressed more recently in *Chandris, Papai,* and *Becker*.

8

238 (5th Cir. 1988) (citing *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1072; 1074 (5th Cir 1986) (en banc)) (Under the *Robison* test, the plaintiff must show that he was permanently assigned to a vessel or permanently attached to a fleet of vessels.); *Bach v. Trident Steamship Co.,* 920 F.2d 322, 326 (5th Cir.), *cert. granted, judgment vacated sub nom. Bach v. Trident S.S. Co.,* 500 U.S. 949, 111 S. Ct. 2253, 114 L. Ed. 2d 706 (1991)[3] ("Dozens (perhaps hundreds) of seaman status cases have come before us, but we have never made an exception to the core requirement that the injured worker show attachment to a vessel or identifiable fleet of vessels.")

Plaintiff failed to establish any attachment to a vessel or an identifiable fleet. Though he states (and the Court must accept as true) that he had been re-assigned to InterMoor's offshore division as an anchor handler, Plaintiff did not present any evidence that he was permanently attached to a particular vessel or fleet of vessels. Contrarily, the evidence shows that he was temporarily assigned to two different vessels during his employment. Moreover, InterMoor's unrefuted evidence shows that it was never retained to navigate or crew vessels and that Plaintiff was not permanently assigned to any particular vessel, including the *Pacific Duchess*. (Rec. Doc. 30-1, p. 2).

---

[3] On remand from the Supreme Court, the Fifth Circuit reiterated its holding that the plaintiff was not a seaman because he failed to meet the attachment test. *Bach v. Trident S.S. Co.,* 947 F.2d 1290, 1291 (5th Cir. 1991).

9

Otherwise, Plaintiff failed to present sufficient evidence that he underwent a change in status from non-seaman to seaman. In response to InterMoor's evidence outlining Plaintiff's work history, Plaintiff stated he has "no reason to doubt the accuracy of the times and locations" provided by InterMoor. (Rec. Doc. 64-2, ¶1). He does not dispute working onshore and on the ARGOS platform as a rigger and in other onshore-type positions for a total 187 days between August 16, 2021 and November 23, 2022. (Id. at ¶2; 5-6). He acknowledges that he was onshore from October 28, 2022 through December 5, 2022, because "InterMoor was not conducting offshore anchor handling work and partially in preparation for the []Pacific Duchess job…" (Id., ¶6), yet he contends he was assigned "to be an offshore division anchor handler on vessels" beginning on October 4, 2022. (Id. ¶7). Plaintiff's position that his status changed to that of seaman by virtue of his mere assignment to the offshore division as an anchor handler, without the requisite time spent aboard or attachment to a particular vessel or fleet is akin to the argument rejected by the court in *Becker*. In *Becker*, the plaintiff argued that his offshore training, his work on a platform, and his assignment to a crew position, *inter alia*, were sufficient to change his status to that of seaman. The court rejected the argument, finding no evidence that his planned activities or essential duties permanently changed. *Becker*, 355 F.3d at 391-92. As in *Becker*, Plaintiff's re-assignment as anchor handler in the offshore division did not constitute a true change

in status absent evidence that he was permanently assigned to a vessel or fleet. Accordingly, the Court recommends a finding that Plaintiff is not a Jones Act seaman, such that removal was permissible.

## **Conclusion**

For the reasons discussed herein, the Court recommends that Plaintiff's Motion to Remand (Rec. Doc. 15) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 26th day of September, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE